# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENT CANDITO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 2:11-cv-529 |
| v | ) |
| | ) |
| NEVIN BEATTY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending now before the Court is DEFENDANT'S MOTION TO DISMISS CERTAIN CLAIMS OF PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), filed by Defendant Nevin Beatty at Doc. No. 6, with brief in support, Doc. No. 7, and PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, Doc. No. 8, with brief in support, Doc. No. 9. The motion is now ripe for disposition. For the reasons that follow, the motion will be granted in part and denied in part.

**I.      Introduction**

Vincent Candito ("Plaintiff") initiated this action on April 22, 2011, with the filing of a three count complaint against Nevin Beatty ("Defendant"), an officer with the Borough of Ohioville Police Department which is located in Beaver County Pennsylvania. Counts I and II charge a mixture of First, Fourth and Fourteenth Amendment claims against Defendant alleging civil rights violations brought pursuant to section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, specifically excessive force, false arrest, malicious prosecution, and retaliation. Count III alleges state law claims of malicious prosecution and false arrest. *See* Plaintiff's Complaint, filed at Doc. No. 1.

The following facts are taken from the complaint. The events underpinning the counts stem from an interaction between the parties that occurred on the afternoon of October 23, 2010. On that day, Plaintiff agreed to assist a neighbor in moving a wood burner stove into his neighbor's basement. Compl. at ¶ 9. Plaintiff "lives across the street from [the neighbor], and since it is a rural area, and Candito was age sixty-two (62), and getting along in his age, he rode his quad directly across the street (at a ninety degree (90°) angle) and onto [the neighbor's] property over to [the neighbor's] house across the street, approximately 127 yards." Compl. at ¶ 10. After the task was completed, Plaintiff returned to his own property by once again operating his all-terrain vehicle (Plaintiff's "quad" or "ATV"), across the street that separated the two properties. Compl. at ¶ 12. Upon returning, Plaintiff realized that he may have lost his tobacco pipe in the course of assisting his neighbor, and retraced his route, once again operating his quad to cross the street onto his neighbor's property and then returning to his own property. Compl. at ¶¶ 12 and 13. After returning to his own property this second time, Plaintiff heard a siren and noticed that a police vehicle had pulled into his driveway. Compl. at ¶ 13. Plaintiff, still operating his quad, pulled along the driver's side of the police vehicle and what can characterized as a verbal confrontation ensued. Compl. at ¶¶ 14 - 22. Because Defendant now seeks the dismissal of Plaintiff's claim that he was unlawfully retaliated against as a result of his exercise of his First Amendment right to freedom of speech, the Court notes the following facts alleged in Plaintiff's complaint:

> 14. In response to the audible siren tone, Candito approached the driver side of the police car, still on his quad, and asked the officer [Beatty] "[w]hat's up?"
>
> 15. Beatty stated to Candito "[g]o get me some identification."
>
> 16. Candito said, "[e]xcuse me."
>
> 17. Beatty then said, "[y]ou heard what the [expletive omitted] I said."

18. Candito then advised Beatty that this was his residence, by stating "[I] live here, this is my home."

19. Beatty then said "I seen you driving down the road on a quad."

20. Candito stated that he had just rode [sic] down from Hall's residence and that the tracks were visible in the grass.

21. Beatty said "[a]re you going to run me over with that quad?"

22. Candito replied "[n]o", Candito then shut off the quad, and removed the keys and placed them in his pocket.

23. Beatty proceeded to tell Candito to get off the quad or that he [Beatty] was going to take him off of it.

Compl.[1]

According to Plaintiff, he was then subjected to unprovoked physical force, as Defendant proceeded to pull him from the quad by his arm, grabbed him in a bear hug, and threw him to the ground where he landed on his neck. Compl. at ¶ 24 - 26. Plaintiff was then forcefully handcuffed while he was on the ground, during the course of which Defendant was screaming at him, and subsequently forcefully shoved into the back of Defendant's police vehicle. Compl. at ¶¶ 26 – 27. Another police officer arrived shortly thereafter, and both proceeded to, *inter alia*, accuse Plaintiff of being under the influence of a controlled substance. Compl. at ¶ 32. On more than one occasion, Plaintiff denied having any controlled substance in his system and further asked to be taken to a local medical center for treatment. Compl. at ¶¶ 31 and 35. His requests were ignored.

The focus of the two officers then shifted to the ownership of the quad that Plaintiff had been operating. The second officer suggested to Defendant that the quad was stolen. Compl. at

---

[1] The Court notes that throughout Plaintiff's complaint, citations followed each factual averments in enumerated paragraphs 10 – 31, 41, and 49 in an undefined format. Each citation included an abbreviation, a page number, and some type of secondary reference, e.g., "(TR p. 45, ln. 17)", the meaning of none of which was otherwise defined in the complaint. Doc. No. 1 at ¶ 14. Because it is not apparent on the face of the complaint to what document these citations refer, and further because these citations are not relevant to the pending motion to dismiss, they have been omitted from the recitation of paragraphs 14 -23 herein.

3

¶ 37. The two officers first tried to locate a serial number for the quad on their own, and then, directed Plaintiff to show them where it was. Compl. at ¶¶ 37 – 38. Plaintiff did so, and was then ordered to produce proof of ownership of the quad. Compl. at ¶ 39. Plaintiff, while still handcuffed, led the two officers into his house and to a safe in his basement where he kept the title. Compl. at ¶¶ 40- 48. After placing Plaintiff once again in the back of the police vehicle, Defendant then used the title document to confirm Plaintiff's ownership. Compl. at ¶ 49. Defendant then proceeded to take Plaintiff to the Ohioville police station. Compl. at ¶50. Thereafter, Plaintiff was returned to his neighbor's property and released to his neighbor. Compl. at ¶ 51.

The following day, a police criminal complaint was filed, charging Plaintiff with one count of misdemeanor terroristic threats (under 18 Pa.C.S.A. § 2706(a)(1)), one count of misdemeanor resisting arrest (18 Pa.C.S.A. § 5104), one count of misdemeanor disorderly conduct (18 Pa.C.S.A.§ 5503(a)(4)); and one summary count of violating the Pennsylvania Vehicle Code for operating his ATV across Tuscarawas Road. Compl. at ¶¶ 52 & 53. Thereafter, a preliminary hearing took place, after which the disorderly conduct charge was held for trial in the Court of Common Pleas of Beaver County, while the remaining charges were dismissed. Compl. at ¶¶ 53 – 54. The disorderly conduct charge was subsequently dismissed *nolle prosequi*. Compl. at ¶ 54.

## II.     Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint. The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 554, 555 (207) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a **plausible** claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (emphasis added).

Thus, after *Iqbal*, a district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court must separate the factual and legal elements of the claim. *Id.* Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id*. at 210-211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id*. at 211 (citing *Iqbal* 129 S. Ct. at 1949). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal* 129 S. Ct. at 1950).

As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Id.* at 211. That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court

5

to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. at 210 (quoting *Iqbal*, 129 S. Ct. at 1948).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and the requirements of Fed. R. Civ. P. 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). Fed. R. Civ. P. 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Additionally, the Supreme Court did not abolish the Fed. R. Civ. P. 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231(citing *Twombly*, 550 U.S. at 553).

Further, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff makes such a request - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir.2007).

### III. Legal Analysis

Defendant's partial motion to dismiss presents three challenges to portions of each of the three counts alleged within the Complaint without seeking the outright dismissal of any count in its entirety. In particular, Defendant challenges the claims alleging violations of Plaintiff's constitutional rights under the Fourteenth Amendment contained in Count I, as well as

6

challenging Plaintiff's First Amendment retaliation claim and Fourth Amendment malicious prosecution claim, both of which are alleged in Count II. More specifically, Defendant contends that: (1) the Fourteenth Amendment claim should be dismissed on the basis that a substantive due process claim is inappropriate in cases where the government conduct in issue is governed by a specific constitutional amendment; (2) the Fourth Amendment claim of malicious prosecution should be dismissed for failing to aver facts regarding each element; and (3) the First Amendment claim of retaliation should be dismissed because Plaintiff has failed to state a claim for which relief can be granted. *See* Doc. No. 6.

At the outset, the Court notes that section 1983 does not create substantive rights, but rather provides a remedy for a violation of rights created by federal law or the Constitution of the United States. 42 U.S.C. § 1983; *City of Okl. City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.ed.2d 791 (1985). 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

To establish a section 1983 claim, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation [violation of a right] was committed by a person acting under the color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). With his partial motion to dismiss, Defendant does not dispute that he was a state actor for the purpose of § 1983. There is no question that Defendant is a police officer with the Borough of Ohioville Police Department, who was acting under the color of state law at the time of the incident. Rather, at issue here is whether sufficient facts have been pled to establish plausible constitutional violations under the Fourteenth, Fourth, and First

7

Amendments to the U.S. Constitution. Thus, the focus turns to whether the allegations sufficiently support claims of constitutional violations as alleged by Plaintiff involving the violation of the substantive due process clause, as well as the right to be free from malicious prosecution and retaliation. The Court will address each of Defendant's arguments *seriatim*.

A.      **Count I: "Excessive Force" under both the Fourth and Fourteenth Amendments**

The Court begins with Count I, styled "Violation of Plaintiff's Civil Rights 42 U.S.C. §1983, *et* seq., Excessive Force". *See* Complaint. By incorporating the factual description of what occurred on October 23, 2010 from the preceding paragraphs, Count I alleges that Defendant "physically restrained [Plaintiff] and seized him using excessive and objectively unreasonable force, without probable cause to use such force, especially when he submitted to the authority of Ohioville, and was acting at all time within his rights." Compl. at ¶ 58. For his part, Defendant challenges what appears to be a compounding of two distinct legal theories of recovery into one paragraph in Count I, namely, the paragraph in which Plaintiff alleges that Defendant deprived him of:

> his rights as guaranteed under the **4th Amendment**, i.e., conducting an objectively unreasonable seizure of Candito in light of the totality of the facts and circumstances, because Candito did not pose an immediate threat to the safety of Beatty, he was not resisting arrest or attempting to evade arrest by flight; **and the 14th Amendment** by deliberately abusing the power granted by Beatty, through his authority granted by Ohioville, that deprived Candito of life, liberty, or property, which deprivation shocks the conscience, together with the 14th Amendment being deliberately indifferent, with gross, wonton and reckless indifference, jointly and/or severally, in failing to properly and appropriately protect Candito.

Comp. at ¶ 62 (emphasis added).

While nowhere within the complaint does the phrase "substantive due process" appear, Defendant moves to dismiss the purported substantive due process claim from Count I to the extent there is one. Defendant's argument is well taken, as the language from Count I is couched

8

in terminology utilized in both 4th Amendment excessive force claims and 14th Amendment substantive due process claims.

As the Supreme Court has previously held, "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 16 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)). Official conduct violates substantive due process if it "shocks the conscience...." *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir.2010) (internal citations and quotes omitted). This standard "encompasses only the most egregious official conduct." *Id.* (internal citations and quotes omitted). At the same time, however, the Supreme Court has "'always been reluctant to expand the concept of substantive due process [.]'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).

With his motion to dismiss, Defendant argues that Plaintiff's Count I allegation of excessive force fits squarely within the Fourth Amendments prohibitions to the use of excessive force by a state actor, and that the "more specific provision rule" forecloses Plaintiff's effort to allege the same conduct as a substantive due process claim. Doc. No. 7 at 4. In opposition to the motion to dismiss his claim alleged under the Fourteenth Amendment, Plaintiff summarily argues that his right to be free from false arrest under the Fourth Amendment provides a basis for relief under the Substantive Due Process Clause of the Fourteenth Amendment. (Plaintiff's Br. in Opp'n at 9 - 11). The Court finds Defendant's argument on this point to prevail.

The well-established rule of law referenced by Defendant, commonly referred to as the "more-specific provision" rule, provides that "'if a constitutional claim is covered by a specific

constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Betts v. new Castle Youth Dev. Ctr.*, 621 F.3d 249- 259-60 (3d Cir. 2010)(quoting *United States v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)). It is important to note that not "all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments." *Id.* For the purpose of this action, however, it is clear that the Fourth Amendment search and seizure paradigm applies, as Plaintiff is alleging the use of excessive force during his arrest. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("all claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard"). As such, under the above rule, any purported substantive due process claim made by Plaintiff in Count I will be dismissed, with prejudice.

**B.    Counts II and III: Plaintiff's Claims of Malicious Prosecution**

In Counts II and III, Plaintiff alleges that Defendant, who was acting under color of state law at the time, initiated a criminal proceeding against Plaintiff without probable cause. Compl. at ¶¶ 67 & 80. According to the Complaint, the aforementioned "proceeding ended favorably for [Plaintiff], as some charges were dismissed on November 23, 2010, and other *nolle prossed* on December 30, 2010." Compl. at ¶ 70. Such conduct, according to Plaintiff, demonstrates that Defendant acted maliciously, and for purposes other than those of bringing justifiable charges against him. Compl. at ¶ 72.

"To prove malicious prosecution under [§] 1983, a plaintiff must show that:

(1)    the defendants initiated a criminal proceeding;

(2)    the criminal proceeding ended in plaintiff's favor;

10

(3) the proceeding was initiated without probable cause;

(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and

(5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cr. 2009)(quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir.2003). The first four elements are the same under Pennsylvania law. *Id.* (citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000)). Defendant moves to dismiss both the section 1983 claim and the Pennsylvania claim of malicious prosecution on the basis that, generally speaking, the Complaint is little more than a bare recitation of the elements of a claim, and, more particularly, that the complaint fails to include any allegation of a deprivation consistent with the concept of a seizure. *See* Doc. No. 7. For his part, Plaintiff contends that he has sufficiently pleaded facts to establish all of the elements for both claims of malicious prosecution. Doc. No. 9.

In terms of the section 1983 claim, the Court agrees with Defendant that Plaintiff has failed to allege any facts to establish the fifth element. As noted herein, the fifth element, unique to a § 1983 malicious prosecution claim, requires that there be a "deprivation of liberty consistent with the concept of seizure" within the meaning of the Fourth Amendment as the result of malicious legal proceedings. *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir.2009); *see also DiBella*, 407 F.3d at 601.

The alleged seizure must occur as a result of the malicious prosecution, and thus, it must occur chronologically after the pressing of charges. *See Penberth v. Krajnak*, No. 3:CV–06–1023, 2008 WL 509174, at \*17–\*18, 2008 U.S. Dist. LEXIS 13018, at \*51–\*54 (M.D.Pa. Feb. 21, 2008), *see also Lopez v. Maczko*, No. 07–1382, 2007 WL 2461709, at \*3–\*4, 2007 U.S. Dist. LEXIS 63416, at \*11–\*12 (E.D.Pa. Aug. 16, 2007). The Court of Appeals for the Third Circuit

has narrowed the applicable definition of seizure to when a criminal defendant is subject to either pretrial custody or "some onerous types of pretrial, non-custodial restrictions" such as those on travel out of the jurisdiction. *DiBella*, 407 F.3d at 603; *see also Gallo v. City of Philadelphia*, 161 F.3d 217, 224 (3d Cir.1998) (although it was a close question, Court of Appeals held that restrictions, which included defendant's arrest and requirement to post a $10,000 bond, prohibition from traveling outside geographic area, requirement to contact pretrial services on a weekly basis, and requirement to attend all court hearings including his trial and arraignment, amounted to a seizure). Attendance at hearings and other pre-trial proceedings has been held not to constitute a seizure within the meaning of the Fourth Amendment. *See Penberth*, 2008 WL 509174, at *17–*18 n. 22, 2008 U.S. Dist. LEXIS 13018, at *51–*52 n. 22. Therefore, the "[t]he type of constitutional injury the Fourth Amendment is intended to redress is the deprivation of liberty accompanying prosecution, not prosecution itself." *DiBella*, 407 F.3d at 603 (citing *Gallo*, 161 F.3d at 222).

As pled, Plaintiff has failed to allege facts of suffering a Fourth Amendment seizure as a result of the alleged malicious prosecution against him in order to support a demand for relief. Within the complaint itself, Plaintiff summarily contends that he "suffered a deprivation of his liberty consistent with the concept of seizure as a consequence of a legal proceeding." Compl. at ¶ 73. In opposing the motion to dismiss, Plaintiff argues that the Court "can take judicial notice that the filing of misdemeanor charges in Beaver County, Pennsylvania are [sic] accompanied by pre-trial restrictions on movement. In fact, Candito was required to be fingerprinted and underwent the other customary rigors attendant to the issuance of a Warrant for Summons." Doc. No. 9 at § III.C. In support of his opposition, Plaintiff further references an unpublished, non-precedential, court of appeals opinion, *Graw v. Fantasky*, to broaden the definition of

12

seizure from previous Third Circuit jurisprudence to include pre-trial proceedings and appearance on charges. 68 Fed.Appx. 378, 382–83 (3d Cir.2003). Plaintiff points to a district court case from the Middle District that followed *Graw*, under the premise that despite *Graw* being unpublished, and therefore non-precedential, it was still persuasive since it was an indication of how the panel would rule. *See Roskos v. Sugarloaf Twp.*, 295 F.Supp.2d 480, 486–87 (M.D.Pa.2003). Plaintiff's reasoning has since been superseded by the Court of Appeals' precedential decision in *DiBella*. The *DiBella* court specifically stated that neither it nor any court in the circuit was bound by *Graw*, and that merely having to appear in court to answer charges does not qualify as a Fourth Amendment seizure. 407 F.3d at 603.

While the complaint itself describes the circumstances leading up to and occurring during the course of Plaintiff's arrest on October 23, 2010, those acts occurred prior to the initiation of charges, which (according to the complaint) occurred on October 24, 2010. *See* Compl. at ¶ 52. As previously noted, a "seizure" for the purpose of a malicious prosecution claim must occur only as a subsequent after effect of an arrest and filing of charges. The arrest alone is not enough in this circuit to constitute a seizure, and, beyond that, attending court proceedings does not constitute a seizure for purposes of the Fourth Amendment. *See DiBella*, 407 F.3d at 603; *see, e.g.*, *Basile v. Township of Smith*, 752 F.Supp.2d 643 (W.D. Pa 2010); *see also Penberth*, 2008 WL 509174, at *17–*18, 2008 U.S. Dist. LEXIS 13018, at *51–*54; *Lopez*, 2007 WL 2461709, at *3–*4, 2007 U.S. Dist. LEXIS 63416, at *11–*12. Here, Plaintiff's complaint does not contain any allegation of any restrictions on liberty following the commencement of the criminal proceeding beyond ostensibly having to attend a preliminary hearing and a subsequent proceeding in the Court of Common Pleas. Nor does Plaintiff assert any restriction on his liberty in his brief in opposition beyond being "required to be fingerprinted and underwent the other

customary rigors attendant to the issuance of a Warrant for Summons." Doc. No. 9. The Court notes that nowhere in Plaintiff's filings are the "other customary rigors" purportedly suffered by Plaintiff actually defined. As such, the Court considers such comment to be nothing more than an undefined appendage to the express requirement of Plaintiff to have his fingerprints taken, and therefore, affords it no credit for purposes of opposing the motion to dismiss as it is an unsupported conclusion. *Accord Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed.1997) ("courts, when examining 12(b) (6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'"). In sum, based on *DiBella* and *Gallo*, Court cannot construe these facts as plausibly stating a Fourth Amendment seizure for the purpose of a federal malicious prosecution claim. Accordingly, the Court will grant Defendant's motion to dismiss the § 1983 malicious prosecution claim.

In addition to his Fourth Amendment malicious prosecution claim contained within Count II, Plaintiff asserts a state law cause of action for malicious prosecution against Defendant in Count III. As noted *infra*, to succeed, he must establish that Defendant: "(1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in favor of the plaintiff." *Corrigan v. Cent. Tax Bureau of Pa.*, 828 A.2d 502, 505 (Pa.Commw.Ct.2003). Unlike its § 1983 counterpart, the state malicious prosecution claim does not require the deprivation of a constitutional right, that is, Plaintiff need not establish a seizure. Unlike the Fourth Amendment malicious prosecution claim (with its

14

requisite element of a deprivation of liberty consistent with the concept of seizure), Plaintiff does sufficiently plead a state law cause of action. As such, Defendant's motion to dismiss Count III will be denied.

## C. Count II: First Amendment Retaliation

Somewhat similar to Count I, with Count II, Plaintiff attempts to conflate several distinct legal claims under a single count that is styled as a "malicious prosecution/false arrest" claim. Beyond alleging both false arrest (which has not been challenged by Defendant) and malicious prosecution (which will be dismissed) in Count II, Plaintiff also alleges that "Candito's 1st Amendment rights are also implicated in that he was restricted in his speech by Beatty, as Beatty punished Candito for his speech." Compl. at ¶ 74.

Defendant moves to dismiss this portion of the Complaint under the pleadings standard established in *Iqbal*, on the basis that Plaintiff pleads no facts upon which such a claim can be based. Doc. No. 7. Defendant argues that "[i]n Count II, Plaintiff regurgitates the elements of malicious prosecution and then throws in paragraph 74 as a *by-the-way*, Plaintiff's First Amendment rights 'are also implicated.'" *Id*. at § III.C.

To establish a First Amendment retaliation claim predicated on 42 U.S.C. § 1983, a plaintiff must prove the following elements: (1) constitutionally protected conduct; (2) that the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his rights; and (3) a causal connection between the two. *See Thomas v. Independence Twp*., 463 F.3d 285, 296 (3d Cir. 2006); *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003); *see also Crawford–El v. Britton*, 523 U.S. 574, 589 n. 10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right."). There is

15

also a fourth element required to state a First Amendment retaliation claim premised on an investigation that leads to a decision to prosecute: the absence of probable cause for the prosecution. *Hartman v. Moore*, 547 U.S. 250, 265-66, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006); *Miller v. Mitchell*, 598 F.3d 139, 154 (3d Cir.2010) (probable cause element applies even where same individual acted as both investigator and prosecutor); *see also Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir.2004). In terms of the second element, the conduct of the governmental agent or body must be sufficient "to deter a person of ordinary firmness from exercising [their] First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir.2006) (citing *Suppan v. Dadonna*, 203 F.3d 228 (3d Cir.2000)). The "effect of alleged retaliation on protected activities need not be great in order to be actionable, but must be more than de minimus." *Kougher v. Burd*, 274 Fed. App'x 197, 200 (3d Cir.2008) (citing *McKee*, 436 F.3d 165, and expanding this principle beyond the employment context to actions by governmental actors on private citizens).

Although rather unclear from the complaint, Plaintiff's First Amendment claim is apparently premised on retaliatory action by Defendant for Plaintiff's having engaged in protected speech. The Court finds that, at this stage, Plaintiff has sufficiently pled a factual basis for his claim. Plaintiff repeatedly alleges the absence of probable cause, *see, e.g.,* Compl. at ¶¶ 67, 71, 80, he pleads that the retaliation was premised upon his rights under the Speech Clause of the First Amendment, *id*. at ¶ 74, and he pleads the verbal exchange that occurred upon Defendant's arrival on his property that immediately preceded the allegations of the use of excessive force, false arrest, and malicious prosecution, *id*. at ¶¶ 14 – 22, 29, 31, 35, and 43. Consequently, Defendant's motion to dismiss Plaintiff's First Amendment retaliation claim will be denied.

For the reasons set forth herein, Defendant's Motion to Dismiss Certain Claims of Plaintiff's Complaint Pursuant to Federal Rule of Civil procedure 12(b)(6), will be granted in part and denied in part. An appropriate order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VINCENT CANDITO,

    Plaintiff,

v

NEVIN BEATTY,

    Defendant.

2:11-cv-529

## ORDER OF COURT

AND NOW, this 19th day of September, 2011, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that DEFENDANT'S MOTION TO DISMISS CERTAIN CLAIMS OF PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (Doc. No. 6) is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion is **GRANTED** in the following respects:

    1)     Plaintiff's Fourteenth Amendment claim, alleged in Count I, is **DISMISSED WITH PREJUDICE**;

    2)     Plaintiff's Fourth Amendment claim of malicious prosecution, alleged in Count II, is **DISMISSED;**

And said Motion to Dismiss Certain Claims of Plaintiff's Complaint is **DENIED** in all other respects.

                                          BY THE COURT:

                                          s/Terrence F. McVerry
                                          United States District Judge

cc:     **Gianni Floro, Esquire**
Email: gfloro84@comcast.net

**Andrew J. Bellwoar, Esquire**
Email: ajbellwoar@sianalaw.com
**Susan L. DiGiacomo, Esquire**
Email: sdigiacomo@sianalaw.com